**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **INTEGRITY WORLDWIDE, INC.,** | § | |
| *Plaintiff*, | § | |
| | § | |
| *v.* | § | **Case No. 3:17-CV-00055** |
| | § | |
| **RAPID-EPS LTD., RAPID PROSAFE** | § | |
| **LLC, EDGE PROTECTION** | § | |
| **SOLUTIONS, AND RAPID EPS SOUTH,** | § | |
| *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Rapid-EPS Ltd., Rapid ProSafe, LLC, Edge Protection Solutions, and Rapid EPS South, LLC's (collectively, "Rapid") Motion to Dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 161. After considering the parties' briefing, relevant facts, and applicable law, the Court **DENIES** Rapid's Motion.

## I. BACKGROUND

On January 6, 2017, Plaintiff Integrity Worldwide, Inc. ("Integrity") filed this action against Rapid, alleging infringement of U.S. Patent Nos. 7,510,152 ("the '152 patent") and 8,152,118 ("the '118 patent") (collectively, the "asserted patents"). The asserted patents were originally issued to inventor Jonathan Jonny Melic ("Melic"), who assigned the asserted patents to Integrity on August 29, 2016. ECF No. 167 at 2. On January 3, 2019, two years after filling this action, Integrity, Melic, and Integrity's Canadian distributor, Dell-Core Edge Protection, Ltd ("Dell-Core"), entered into an agreement entitled Asset Purchase Agreement and Loan Extension Agreement (the "Dell-Core Agreement"). ECF No. 161 at 4; No. 167 at 1; ECF No. 162-2.

Pursuant to the Dell-Core Agreement, on January 3, 2019, Integrity assigned the asserted patents to Melic, who then assigned them to Dell-Core, who in turn assigned certain rights in the asserted patents back to Integrity. ECF No. 161 at 5; No. 167 at 1.

On a separate issue, during the prosecution of the application that led to the '118 patent, Melic overcame a double patenting rejection from the U.S. Patent and Trademark Office ("PTO"), based on another application that was eventually issued as U.S. Patent No. 8,590,849 ("the '849 patent"), by filing a terminal disclaimer. *Id*. at 11. The terminal disclaimer filed with the PTO states that the '118 and '849 patents are "enforceable only for and during such period that [they] are commonly owned." *Id*. However, when Melic assigned the '118 patent to Integrity on August 29, 2016, the '849 patent was not included in that assignment. *Id*. After Integrity filed this action in January 2017, asserting the '118 and '152 patents, Rapid alerted Integrity to a potential common ownership issue with respect to the '118 patent. ECF No. 167 at 2. On December 12, 2017, Melic assigned the '849 patent to Integrity in an attempt to cure the common ownership defect. ECF No. 161 at 11.

In its Motion to Dismiss, Rapid raises two issues before the Court: (1) whether Integrity lost standing to sue regarding the '152 and '118 patents after the series of transactions in connection with the Dell-Core Agreement, and (2) whether Integrity lacked standing to sue regarding the '118 patent when this action was filed, and if so, whether the defect was cured by Melic's subsequent attempt to cure the common ownership issue.

## II. STANDING TO SUE

### A.    Legal Standard

Title 35 allows a "patentee" to bring a civil action for patent infringement. 35 U.S.C. § 281. A patentee is one with "all rights or all substantial rights" in a patent. *Lone Star Silicon*

*Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1228 (Fed. Cir. 2019). The term patentee includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). However, a mere licensee is not a patentee. *Lone Star*, 925 F.3d at 1228. A patentee can sue for patent infringement in its own name. *Id*. If the plaintiff is not a patentee but a licensee with "exclusionary rights," it can only sue for patent infringement along with the patentee. *Id*. However, if the plaintiff is a licensee who lacks exclusionary rights, it cannot sue for patent infringement even along with the patentee. *Id*.

"If the party asserting infringement is not the patent's original patentee, the critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license." *Id.* at 1229 (citation omitted). "Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891). Thus, courts must "examine whether the agreement transferred all substantial rights to the patents" to distinguish between "an assignment" and a "mere license." *Lone Star*, 925 F.3d at 1229. A court's "task is not to tally the number of rights retained against those transferred"; rather, it should "examine the 'totality' of the agreement to determine whether a party other than the original patentee has established that it obtained all substantial rights in the patent." *Id*. "This inquiry depends on the substance of what was granted rather than formalities or magic words." *Id*.

The Federal Circuit has provided a non-exhaustive list of rights whose holders should be examined to determine whether a party possesses "all substantial rights" in a patent. *Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010) (listing factors to consider when determining whether a transfer constitutes an assignment or license).

Among those rights, the enforcement right and alienation right in a patent can be decisive. *Lone Star*, 925 F.3d at 1231. If a transferee needs consent from the transferor to file suit, the transferee has not received "all substantial rights" to the patent. *Id*. Similarly, if the transferor retains the right to prevent the transferee from assigning the patents, that also weighs against finding "all substantial rights" in the patent. *Id*. In addition, the Federal Circuit has observed that: (1) "transfer of the exclusive right to make, use, and sell products or services under the patent is vitally important to an assignment," and (2) "the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration." *Alfred*, 604 F.3d at 1360–61.

Fed. R. Civ. P. 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. However, in accordance with the Supreme Court's ruling in *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118 (2014), the Federal Circuit held that "statutory standing," *i.e.* whether a party can sue under a statute such as § 281, is not jurisdictional. *Lone Star*, 925 F.3d at 1235. Therefore, "whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction." *Id*. at 1235–36. Consequently, if a licensee with exclusionary rights in a patent files suit in its own name, the cure for this defect is to join the patent owner under Fed. R. Civ. P. 19 rather than dismissing the case. *Id*. at 1238.

### B.    The Dell-Core Agreement

According to the Dell-Core Agreement, a three-party agreement between Melic, Integrity, and Dell-Core, Dell-Core purchased the "Speed Edge Patents," which includes the '152 and '118 patents asserted in this action, and all manufacturing rights to the "Speed Edge Products." ECF No. 162-2 (Asset Purchase Agreement and Loan Extension Agreement) at §

2.01. Dell-Core may grant Integrity "from time to time a license to manufacture Speed Edge Product." *Id*. at § 13.03.

Regarding the asserted patents, Integrity transfers to Melic "all of its rights, title and interests in the ['118 and '152 patents] for the entire term of the patents," and Melic immediately transfers the same to Dell-Core. *Id*. at Schedules H1 and H2. Subsequently, Dell-Core transfers interests in the '118 and '152 patents back to Integrity according to the following provision:

> Assignor [Dell-Core] assigns and hereby transfers to Assignee [Integrity] the exclusive right, title, and interest in the Patents. These rights include the rights that convey standing to Assignee to enforce the Patents against [Rapid], as set out in Article 14 aforesaid. . . . Assignee agrees that it will cover all costs of enforcement and Assignor agrees that Assignee shall receive all proceeds from such enforcement proceedings, including any proceeds received from any settlement of the enforcement proceedings.

*Id*. at Schedule I. The Dell-Core Agreement further includes an "Acknowledgement" section that illustrates the nature of this transfer:

> [Integrity] acknowledges that [Dell-Core] has assigned the ['118 and '152 patents] to [Integrity] as an accommodation for the purposes solely of allowing them to prosecute the existing litigation for infringement of the ['118 and '152 patents] against [Rapid] (the "Litigation"). . . . upon conclusion of the Litigation [Integrity] shall immediately re-assign the ['118 and '152 patents], at its sole cost including registration fees to [Dell-Core] and further acknowledges, covenants and agrees to execute a re-assignment of same now, to be held in trust by [Dell-Core] until conclusion of the Litigation, including appeals.
>
> During the cause of the Litigation and until re-assignment of the ['118 and '152 patents], [Dell-Core] shall have the right to use of the ['118 and '152 patents] for all purposes save and except prosecuting any infringement.

*Id*. at Schedule J.

## C.    Analysis

The critical question here is whether Integrity owns "all substantial rights" to the asserted patents under the Dell-Core Agreement. The Court is of the opinion that it does not. Although the transfer agreement from Dell-Core to Integrity characterizes the transfer as "assignment," it

is the legal effect of the agreement, rather than the name by which the agreement is called, that controls. *See A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010) ("In determining ownership for purposes of standing, labels given by the parties do not control. Rather, the Court must determine whether the party alleging effective ownership has in fact received all substantial rights from the patent owner."). Integrity contends that the transfer agreement specifically grants it standing to sue via the language "[t]hese rights include the rights that convey standing to [Integrity] to enforce the ['118 and '152 patents] against [Rapid]." ECF No. 167 at 4. However, standing to sue cannot be conveyed to a transferee without granting the transferee all substantial rights in the patents. *See, e.g., Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000) ("Standing to sue for infringement depends entirely on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among the parties regarding who may sue and who will be bound by judgments."); *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998) ("A 'right to sue' provision within a license cannot, of its own force, confer standing on a bare licensee.").

Regarding rights that the Federal Circuit considers as the most important in the "patentee" inquiry, the Court first considers the alienation right in the asserted patents. The Dell-Core Agreement provides that "upon conclusion of the Litigation [Integrity] shall immediately re-assign" the asserted patents back to Dell-Core. ECF No. 162-2 at Schedule J. Further, Integrity "acknowledges, covenants and agrees to execute a re-assignment of same now, to be held in trust by [Dell-Core] until conclusion of the Litigation" and duly has executed an agreement re-assigning the asserted patents back to Dell-Core to be held in trust by Dell-Core. *Id*. at Schedules J and K. Therefore, it is clear that Integrity has no alienation right in the asserted patents at all since it only has rights in the asserted patents until this litigation against Rapid is

6

terminated. *See Intell. Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) (finding a transfer is fewer than all substantial rights in the patents, where, among others, the transferor retained the right to prevent the transferee from assigning the patent without prior written consent); *Lone Star*, 925 F.3d at 1232 (finding a transferee does not have all substantial rights in the patents, where, in addition to limited enforcement right, the transferee cannot transfer the patents to a buyer unless that buyer agrees to be bound by the same restrictions imposed by the transferor as the transferee).

The Court then considers the nature of Integrity's right to enforce the asserted patents. In the Dell-Core Agreement, Integrity acknowledges that Dell-Core transferred the asserted patents to it "as an accommodation for the purposes solely of allowing them to prosecute the existing litigation for infringement of the [asserted patents] against [Rapid]." ECF No. 162-2 at Schedule J. This is exactly the "hunting license" that the Supreme Court and Federal Circuit have long disapproved: "a 'right to sue' clause cannot confer standing on a bare licensee . . . To hold otherwise would allow a patent owner to effectively grant a 'hunting license,' solely for the purpose of litigation, in the form of a *pro forma* exclusive license." *See Prima Tek II*, 222 F.3d at 1381 (*citing Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 42 (1923)).

Considering Integrity's lack of alienation right in the asserted patents and the nature of the enforcement right granted to it, the Court finds that that Integrity does not have "all substantial rights" in the asserted patents. Thus, the Court finds no need to labor through the analysis of other rights in the asserted patents, such as who owns the exclusive right to make, use, and sell products or services under the patents.

The next issue is then whether Integrity has "exclusory rights" in the asserted patents as a licensee. The Court finds that it does. The Dell-Core Agreement provides that Dell-Core

transfers to Integrity "the exclusive right, title and interests" in the asserted patents, and that "during the course of the Litigation and until re-assignment of the [asserted patents], [Dell-Core] shall have the rights to use of the [asserted patents] for all purposes save and except prosecuting any infringement." ECF No. 162-2 at Schedules I and J. The Court finds that Integrity has exclosury rights in the asserted patents since it has at least the exclosury rights to prosecute any infringement until re-assigning the patents back to Dell-Core.

Because Integrity is an exclusive licensee of the asserted patents, it cannot sue for infringement in its own name, but can only sue along with the patentee, here, Dell-Core. *See Lone Star*, 925 F.3d at 1228. Under the Federal Circuit law, "the cure for this defect is to join the patent owner and not to dismiss the case." *Id*. at 1238 ("Rule 19 is mandatory and so it applies whether a defendant invokes Rules 12(b)(1), (6), (7), or none of the above."). Therefore, the Court will allow Integrity to join Dell-Core as co-plaintiff to this action under Federal Rule of Civil Procedure 19.

### III. TERMINAL DISCLAIMER

To have standing to assert patent infringement, a plaintiff must have an enforceable title to the patent at the inception of the lawsuit. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010). To enforce a patent subject to a terminal disclaimer filed to overcome a double patenting rejection, the plaintiff must also own the disclaimer patent. 37 C.F.R. § 1.321(c)(3); *see also In re Hubbell*, 709 F.3d 1140, 1148 (Fed. Cir. 2013) (citing In re Fallaux, 564 F.3d 1313, 1319 (Fed. Cir. 2009)).

It is undisputed that: (1) the '118 patent is subject to a terminal disclaimer, rendering it unenforceable unless the '118 and '849 patents are commonly owned, (2) when this action was filed in January 2017, Integrity only owned the '118 patent, but not the '849 patent, and (3) the

'849 patent was subsequently assigned to Integrity in December 2017. Thus, the issue before the Court is whether Integrity lacked standing to sue for infringement of the '118 patent due to its violation of the terminal disclaimer through lack of common ownership when this action was filed. The parties note that there is no controlling Federal Circuit case law on this issue, and the only two district court cases on point, with almost the same fact pattern as this action and decided one day apart from each other, have the opposite outcomes. In *Midwest Athletics & Sports Alliance LLC v. Ricoh USA, Inc.*, No. 19-cv-514, 2019 WL 3387061 (E.D. Pa. July 25, 2019), Judge Savage held that the plaintiff did not have standing to sue because the asserted patents were not enforceable at the inception of the lawsuit due to lack of common ownership of the terminal disclaimer patents, and that the plaintiff may not cure this defect by acquiring the terminal disclaimer patents. *Id*. at *1–*3. In reaching this conclusion, Judge Savage relied on the Federal Circuit's rulings in *Abraxis* and *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003) that a plaintiff must hold "enforceable title" to the patent at the inception of the lawsuit. *Id*. at *2.

On the other hand, in *Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*, No. 6:18-cv-00407-RWS, Dkt. #106 (E.D. Tex. July 26, 2019), Judge Schroeder pointed out that "enforceable title" is different from the "enforceability" of a patent. *Id*. at 6. "Holding enforceable title means that the owner has title that is superior to all others, whereas enforceability concerns equitable issues that may preclude or limit recovery." *Id*. (citing *Paradise*, 315 F.3d at 1309). Therefore, Judge Schroeder concluded that "even if the [asserted patent] was unenforceable at the time of filing due to lack of common ownership with the [disclaimer patent], Plaintiff still held *enforceable title* to the [asserted patent] and had standing to bring suit." *Id*. at 7 (emphasis added). This Court agrees. The Federal Circuit's rulings in *Abraxis* and *Paradise* do not support the proposition that

unenforceability implicates Article III standing. This interpretation is more in line with the Federal Circuit's more recent ruling in *Lone Star*, where the Court concluded that "whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction." *Lone Star*, 925 F.3d at 1235–36. Here, there is no dispute that Integrity had an enforceable title to the '118 patent at the inception of this action and therefore had standing to sue for patent infringement.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Integrity does not have "all substantial rights" to the asserted '118 and '152 patents (therefore not a patentee) and cannot sue for patent infringement in its own name. However, Integrity is allowed to join Dell-Core, the real patentee, under Federal Rule of Civil Procedure 19. The Court further finds that Integrity's lack of common ownership of the '118 patent and its terminal disclaimer patent (the '849 patent) does not affect its standing to sue because it had an enforceable title to the '118 patent when this action was filed. It is therefore **ORDERED** that Rapid's Motion to Dismiss for lack of standing is **DENIED**.

SIGNED this 22nd day of July, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE